UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TORIE LIPPETT,

      Plaintiff,

v.                                                                          Case No. 8:24-cv-2818-CPT

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Doc. 14). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1973, has some high school education, and has no past relevant work. (R. 28, 40, 339). In August 2021, the Plaintiff applied for DIB and SSI, alleging disability as of August 2020 due to anxiety, depression, diabetes, hypertension, acid reflux, back problems, high cholesterol, a curved spine, and a bulging radial herniated disk. *Id.* at 156–85, 322–40. The Social Security

Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. *Id*. at 164–65, 186–87.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in June 2024. *Id.* at 37–66, 241–42. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* at 37–66. A vocational expert (VE) also testified. *Id.*

In a decision issued in June 2024, the ALJ determined that the Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date in August 2020; (2) had the severe impairments of generalized anxiety disorder, diabetes mellitus with neuropathy, and disorder of the skeletal spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work subject to various limitations; and (5) based on the VE's testimony, could engage in the representative occupations of office helper, routing clerk, and photocopy machine operator. *Id.* at 19–36. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 29–30.

---

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's request for review.  *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner.  *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A), 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision disposing of the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In resolving whether substantial evidence bolsters the

Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F. 4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F. 4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

## III.

The Plaintiff raises two challenges on appeal: (1) the ALJ did not account for the Plaintiff's mental limitations identified at step two in rendering his RFC determination at step four; and (2) the ALJ also erred at step four by not properly considering a report prepared by a consultative examiner and licensed psychologist, Dr. William Austin. (Doc. 14). Each of these challenges will be addressed in turn.

## A.

As referenced above, an ALJ must assess at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *See McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4). The severity of an impairment is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is deemed to be severe only if it significantly limits a claimant's physical or mental

capacity to engage in basic work activities. *See* 20 C.F.R. §§ 404.1522(a), 416.922(a); *Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam).  A non-severe impairment, on the other hand, is one that does not have such an effect.  *See* 20 C.F.R. §§ 404.1522(a), 416.922(a).  In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Where, as here, a claimant presents a "colorable" claim of a mental impairment, an ALJ must apply the regulatorily-mandated Psychiatric Review Technique (PRT) at step two.  *See Moore*, 405 F.3d at 1213–14 (citing 20 C.F.R. § 404.1520a).  This technique requires an assessment of how a claimant's mental impairment affects four broad functional areas (known as the Paragraph B criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

If an ALJ determines after applying the PRT that a claimant has no or only mild functional restrictions in these four domains, he will generally conclude that the claimant's mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  The Regulations dictate that an ALJ provide a specific explanation for his opinion, including the degree of limitation

6

found in each area. *Id.* §§ 404.1520a(c)(4), (e)(4), 416.920a(c)(4), (e)(4). An ALJ must then incorporate the results of the PRT into his findings and conclusions. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

The PRT, however, is separate and apart from an ALJ's RFC determination at step four, which dictates that the ALJ gauge a claimant's maximum capacity to do work despite her impairments, both severe and non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). The RFC analysis at step four therefore represents a more detailed assessment of a claimant's ability to function than the one conducted at step two. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *see also* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that the criteria used to rate the severity of mental impairments at step two do not equate to an RFC determination, which involves a "more detailed" evaluation that obligates an ALJ to "itemiz[e] various functions contained in the [four] broad" areas). As a result, even when an ALJ finds that a claimant suffers from a non-severe mental impairment at step two, the ALJ's RFC determination at step four must consist of more than an implicit or perfunctory finding that the claimant's affliction "impose[s] no significant limitations on [her] work-related mental capacities." *Schink*, 935 F.3d at 1269.

In this case, the ALJ noted at step two that the Plaintiff suffered from the mental impairment of generalized anxiety disorder.  (R. 21).  After applying the PRT, the ALJ found, as pertinent here, that the Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace.[4]  *Id.* at 23–24.  Upon determining the RFC at step four, the ALJ concluded that the Plaintiff could engage in light work subject to certain conditions, including that the Plaintiff could "understand, remember, carry out, and perform simple[,] routine tasks and instructions, consistent with a reasoning level of [one] or [two],[5] with only occasional interaction with the public, co-workers, and supervisors."[6]  *Id.* at 25.  The ALJ included these limitations in his hypothetical to the VE, who opined that the Plaintiff could fulfill the duties and responsibilities of the three occupations listed above.  *Id.* at 63–64.

---

[4] "The category of concentration, persistence[,] or pace refers to the 'ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'"  *Moore v. Colvin*, 2013 WL 1278085, at *7 (M.D. Fla. Mar. 28, 2013) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00).  The Plaintiff does not meaningfully contest the ALJ's finding of a moderate impairment in this domain and has thus waived any such objection.  *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (ruling that a party abandons a claim when, among other things, she "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a party waived a contention "because he did not elaborate on th[e] claim or provide citation to authority about [it]") (citation omitted).

[5] Reasoning levels measure a claimant's ability to execute certain basic functions related to education and necessitate that the claimant be capable of carrying out instructions and performing mental tasks.  *See* DOT, App'x C (4th ed. 1991), 1991 WL 688702.  Reasoning levels range from one to six, with one being the lowest and six being the highest.  *Id.*

[6] For ease of reference, this limitation will be referred to herein as the "simple, routine tasks" restriction.

The Plaintiff now contends that the ALJ's simple, routine tasks restriction does not account for her moderate limitation in concentration, persistence, and pace. (Doc. 14 at 10). This argument is unavailing.

The Eleventh Circuit in *Winschel* addressed the impact of a moderate limitation in the domain of concentration, persistence, or pace. In *Winschel*, the ALJ determined that the claimant's impairments caused a moderate restriction in this area but did not find based on the medical evidence that the claimant's ability to work was unaffected by this limitation. *Winschel*, 631 F.3d at 1181. Notwithstanding the lack of such a finding, the ALJ neglected to ask the VE a hypothetical question that either expressly or impliedly incorporated this limitation. *Id*.

On appeal, the claimant argued that this oversight by the ALJ constituted reversible error, and the Eleventh Circuit agreed. *Id*. at 1178, 1180. In arriving at this determination, the court set forth the following analytical framework, which it gleaned from the opinions of other circuit courts.

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that [an ALJ's limiting the hypothetical to the VE] to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

*Id*. at 1180–81 (internal citations omitted).

9

The Eleventh Circuit has expounded upon this analytical framework since it decided *Winschel*. In *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869 (11th Cir. 2011) (per curiam), for example, the Eleventh Circuit discussed *Winschel* and stated that a hypothetical question to a VE which "restrict[s] the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence[,] and pace *where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies*." *Id*. at 872 (citing *Winschel*, 631 F.3d at 1181) (emphasis added). The Eleventh Circuit followed this approach two years later in separate cases. *See Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) ("Because the evidence showed that [the claimant] could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed [the claimant's] limitations as to concentration, persistence, or pace.") (citation omitted); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 951 (11th Cir. 2013) (per curiam) ("The ALJ's hypothetical questions to the [VE] fully accounted for [the claimant's] moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."). The takeaway from *Winschel* and its progeny is that an ALJ need not impose a restriction in his RFC for a claimant's moderate limitation for maintaining concentration, persistence, or pace if the medical evidence indicates the claimant has the capacity to engage in simple and routine tasks. *See id.*

Rather than directly confront this line of authority, the Plaintiff instead cites *Cruz v. Kijakazi*, 2023 WL 5217189 (M.D. Fla. Aug. 15, 2023). *See* (Doc. 14 at 9–10).

10

In *Cruz*, the ALJ found that the claimant had a moderate restriction in his ability to concentrate, persist, or maintain pace and included in his RFC a limitation that the claimant could not handle any "high stress work," could not engage in any occupation "that would typically require conflict with others," and could not take on any position that would make him "responsible for the safety of others as the primary function of the job." *Cruz*, 2023 WL 5217189, at *9 (internal citations omitted). The claimant challenged these restrictions as inadequate, and the court agreed. It explained that "[w]hile these limitations m[ight] address workplace adaptation or ability to interact with others, they d[id] not manifestly account for limitations in [the claimant's] concentration, persistence, or pace." *Id.* (citation omitted).

The Plaintiff's reliance on *Cruz* is misplaced. Unlike here, the ALJ in *Cruz* did not adopt the restriction that the claimant engage in only simple and routine tasks. Moreover, the court in *Cruz* acknowledged the pronouncement in *Winschel*—reiterated in subsequent decisions—that restrictions to "simple, repetitive work . . . [are] sufficient to account for moderate difficulties in concentration, persistence, or maintaining pace, if, despite those deficits, the medical evidence demonstrates [the claimant's] ability to perform such work." *Cruz*, 2023 WL 5217189, at *10 (citations omitted).

The Plaintiff alternatively argues that the ALJ's finding in the first instance that she retained the ability to take on simple routine tasks notwithstanding her moderate limitation in concentration, persistence, and pace is not properly substantiated by the record. (Docs. 14, 17). This contention is unavailing as well.

In reaching his RFC determination, the ALJ conducted a robust review of the medical evidence before him. As relevant to the Plaintiff's first challenge, the ALJ found that even though the Plaintiff reported having "trouble focusing and forgetfulness," the only "consistent abnormalities" she displayed in her mental status examinations throughout 2021 to 2023 was having an "anxious mood and poor insight." (R. 27). In February 2022, for example, the Plaintiff's mental status examination was normal with the exception that she exhibited a depressed and fearful mood and only fair judgment and insight. *Id.* As another example, at a consultative examination in January 2024, the Plaintiff's speech and thought process were normal despite the fact that her attention and concentration were subpar. *Id.*

In addition to these largely unexceptional mental status examinations, the ALJ pointed out that the Plaintiff made inconsistent statements to her mental health provider, did not always follow her prescribed treatment, and had not been diagnosed with attention deficit-hyperactivity disorder. *Id.* at 24, 27. The ALJ also referenced the opinions of state agency examiners, who deemed the Plaintiff to have no more than mild mental limitations. *Id.* at 27–28. While the ALJ found these opinions to be generally persuasive, the ALJ nevertheless imposed additional mental limitations to account for the Plaintiff's anxiety. *Id.* Notably, the Plaintiff does not explain what greater mental restrictions the ALJ should have imposed as part of his RFC, nor does she clearly articulate why the ALJ's RFC fails to adequately address her mental impairments. (Docs. 14, 17).

12

As the above evidentiary recitation demonstrates, the ALJ properly considered the medical information and documentation before him in arriving at his RFC determination, including that the Plaintiff could perform simple, routine tasks and instructions, and that determination is adequately bolstered by the record. The Plaintiff does not show otherwise. *See Hardy v. Comm'r of Soc. Sec.*, 2025 WL 925849, at \*5–6 (M.D. Fla. Mar. 27, 2025) (finding that the ALJ appropriately confined the claimant to simple, routine tasks notwithstanding his moderate limitations in concentration, persistence, and pace where the evidence revealed, among other things, the claimant's unremarkable mental status findings and his capacity to engage in a number of daily activities); *see also Hernandez v. Saul*, 2020 WL 8083837, at \*13–14 (S.D. Fla. Dec. 22, 2020) (deeming there was substantial evidence to buttress the ALJ's conclusion that the claimant could perform "simple, routine, and repetitive tasks and [have] occasional interactions with co-workers, supervisors, and the public, and occasional work-setting changes," even though he had a moderate limitation in the area of concentrating, persisting, or maintaining pace where the claimant's "mental status exam findings were, for the most part, benign" and the claimant was stable on medications).

In sum, the Court is unpersuaded by the Plaintiff's contention that the ALJ did not account for the Plaintiff's mental limitations in rendering his RFC determination or that the ALJ's findings surrounding this issue are not properly supported. To the extent the Plaintiff invites the Court to reweigh the evidence pertaining to these issues, the Court is prohibited from doing so. *See Viverette*, 13 F. 4th at 1314; *see also Miles v.*

13

*Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (stating that a court may not "reweigh the evidence" on a social security appeal) (per curiam) (citation omitted); *Gray v. Comm'r of Soc. Sec.*, 2018 WL 3805866, at *4 (M.D. Fla. Aug. 18, 2018) (same) (quoting *Moore*, 405 F.3d at 1213).

B.

The Plaintiff's second challenge—as referenced previously—is that the ALJ erred in the way he treated Dr. Austin's report at step four. (Doc. 14). This challenge is likewise without merit.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, the ALJ must decide given all the pertinent evidence before him what a claimant can do in a work setting notwithstanding any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id*. §§ 404.1545(a)(1), 416.942(a)(1). In making this assessment, an ALJ must evaluate all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citations omitted); 20 C.F.R. §§ 404.1514a(b)(1), 416.913a(b)(1).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant can still do despite her limitations; whether the claimant's capacity to perform various work activities is diminished; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions,

14

such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021), *superseded by regulation on other grounds as stated in Glover v. Comm'r of Soc. Sec. Admin.*, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022). The ALJ now determines the persuasiveness of a medical opinion and a prior administrative medical finding instead of generally predicating their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. §§ 404.1527(1), 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c. In conducting this analysis, an ALJ must assess the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.*

§§ 404.1520c(c), 416.920c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of import here, there is a separate category of evidence known as "[o]ther medical evidence," which "includ[es] judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."   20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).   An ALJ is not required to assess "other medical evidence" for persuasiveness. *Rivera v. Comm'r of Soc. Sec.*, 2021 WL 3602839, at *4 (M.D. Fla. Aug. 13, 2021) (citations omitted).

In this case, Dr. Austin prepared a report relating to a consultative psychological examination of the Plaintiff that he performed in January 2024.  (R. 1099–1101).  In his report, Dr. Austin recounted the Plaintiff's medical history and activities of daily living, which included the Plaintiff's reports of anxiety and forgetfulness, as well as the fact that she could drive and manage her own funds.  *Id.* at 1100.  Dr. Austin also noted that the Plaintiff displayed a mild impairment in short-term memory, along with a moderate limitation in insight, judgment, and impulse control.  *Id.* at 1100–01.  At the conclusion of his report, Dr. Austin described the Plaintiff's functional ability as "limited" as a result of her "emotional distress associated with ongoing medical and financial problems," and her social functioning as "limited" based on her claim of "reduced peer relationships due to medical impairments and anxious distress."  *Id.* at 1101.

The Plaintiff now contends that the ALJ should have deemed Dr. Austin's observations regarding her social and general functioning as a medical opinion and analyzed it as such. (Docs. 14, 17).  The Court disagrees.

Contrary to the Plaintiff's assertions, none of Dr. Austin's comments in his report rise to the level of a medical opinion detailing what the Plaintiff "can still do despite [her] impairments" or whether the Plaintiff has any "impairment-related limitations and restrictions" in her "ability to perform mental demands of work activities[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Dr. Austin's remarks instead fit squarely withing the category of "other medical evidence."  *See* 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).  As such, the ALJ was not duty-bound to assess their persuasiveness.  *See Ball v. Soc. Sec. Admin., Comm'r*, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025) (per curiam) (explaining that the ALJ correctly declined to gauge the persuasiveness of a nurse practitioner's documentation because it "addressed activities [the claimant] should not engage in at all, not what he could still do in a work context"); *Romero v. Comm'r of Soc. Sec.*, 752 F. App'x 906, 908 (11th Cir. 2018) (per curiam) (finding that statements in medical records did not amount to medical opinions because they concerned "only [the claimant's] physical complaints, his medical history, the results of his physical examinations and laboratory tests, and recommendations for and responses to treatment," as opposed to "what activities [the claimant] c[ould] or [could not] perform"); *Muniz v. Colvin*, 2025 WL 444039, at *2 (S.D. Fla. Feb. 10, 2025) (rejecting an argument that comments by a healthcare provider that the claimant's "social functioning [wa]s moderate" and that she [wa]s

17

"limited by her depression and panic attacks" qualified as a medical opinion); *Levin v. Comm'r of Soc. Sec.*, 2022 WL 93539, at *7–8 (M.D. Fla. Jan. 10, 2022) (finding that an ALJ was not obligated to evaluate a remark characterizing the claimant's social functioning and functioning ability as "limited" as a medical opinion).

IV.

In light of all the above, it is hereby ORDERED:

1.     The Commissioner's decision is affirmed.

2.     The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 30th day of March 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

18